UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JEFFREY NIEMAN                                            PLAINTIFF

V.                     NO. 3:16CV00182-JTR

NANCY A. BERRYHILL,[1]
Acting Commissioner,
Social Security Administration                        DEFENDANT

## ORDER

### I. Introduction:

Plaintiff, Jeffrey Nieman, applied for supplemental security income on July 17, 2011 and for disability income benefits on September 22, 2011. (Tr. at 88). In both applications, he alleged disability beginning on April 10, 2011. *Id.* After a hearing before an ALJ, his claims were denied. (Tr. at 102). Nieman requested review by the Appeals Council; it remanded the case for further consideration of Nieman's maximum residual functional capacity ("RFC") and for clarification of vocational expert evidence. (Tr. at 9). After a second hearing, the ALJ again denied Nieman's claims. (Tr. 21). The Appeals Council denied his request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Nieman has requested judicial review.

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

For the reasons stated below, the Court reverses the ALJ's decision and remands for further review.[2]

## II. **The Commissioner's Decision:**

The ALJ found that Nieman had not engaged in substantial gainful activity since the alleged onset date of April 10, 2011. (Tr. at 11). At Step Two of the five-step analysis, the ALJ found that Nieman has the following severe impairments: disorder of the lumbar spine, asthma, depression, and anxiety. (Tr. at 12).

After finding that Nieman's impairments did not meet or equal a listed impairment (Tr. at 12), the ALJ determined that Nieman had the residual functional capacity ("RFC") to perform light work with the following limitations: 1) he could occasionally lift up to twenty pounds and frequently lift up to ten pounds; 2) he could stand/walk no more than two hours in an eight-hour workday, and sit up to six hours in an eight-hour workday; 3) he could frequently climb ropers, ladders, and scaffolds, and frequently balance, kneel, crouch, crawl, and stoop; 4) he is limited to performing semi-skilled work where interpersonal contact is routine, but superficial; 5) he could learn by experience and use several variables with judgment within limits; and 6) he could work where supervision is little for routine tasks, but detailed for tasks that are not routine. (Tr. at 13).

---

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

After finding that Nieman is unable to perform any past relevant work (Tr. at 19), the ALJ relied on the testimony of a vocational expert to find that, based on Nieman's age, education, work experience and RFC, there were jobs in significant numbers in the national economy that he could perform, specifically, Companion, Ticket Seller, and Compact Assembler. (Tr. at 20). Based on that determination, the ALJ held that Nieman was not disabled. (Tr. at 21).

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

B. Nieman's Arguments on Appeal

Nieman argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ erred in finding that he did not meet Listing 1.04 (Disorders of the Spine).

Nieman injured his back in an automobile accident in 1994. (Tr. at 14). He suffered from pain that radiated down his legs, and several doctors recommended surgery. (Tr. at 14, 40). A 1995 lumbar MRI showed disc degeneration at L4-5 with posterior disc herniation associated with prominent articulating facets and ligamenta flava with moderate spinal stenosis. (Tr. at 507). The disc herniation was larger than that indicated on a prior MRI. *Id.* A lumbar MRI taken on April 26, 2011 showed broad-based central disc protrusion or osteophytes with some flattening of the thecal sac at both nerve roots, at the L4-L5 and L5-S1 levels. (Tr. at 702).

On May 17, 2011, Nieman complained of constant back pain which radiated into his legs. (Tr. at 571-572). A lower extremity exam revealed weak dorsiflexion, weak left knee extension, and positive left leg lifting sign. A lumbar MRI revealed moderate lumbar stenosis at L4-L5 due to facet hypertrophy and a broad-based disc bulge at L5-S1. (Tr. at 572). Nieman was referred to physical therapy and continued on Meloxicam. *Id.*

At an orthopedic consultative examination with Adam Dooley, M.D., Nieman

4

complained of deteriorating low back pain running down his left leg. (Tr. at 668). He said physical therapy did not help, and he was taking Naproxen and Tramadol. *Id*. A musculoskeletal exam showed tenderness in the lower spine, decreased range of motion, and positive straight leg raise on the left. (Tr. at 669). Dr. Dooley noted an antalgic gait, and that Nieman was unable to bend and squat. *Id*. Dr. Dooley diagnosed radiculopathy and degenerative disc disease. (Tr. at 670). Dr. Dooley opined that Nieman could occasionally lift/carry up to twenty pounds, and he could stand and walk at least two hours in an eight-hour workday. (Tr. at 672-73). He said sitting was not affected by Nieman's impairment. *Id*.

On January 27, 2015, Roger Troxel, M.D., submitted a medical source statement. (Tr. at 764). Dr. Troxel had treated Nieman since at least 2003. (Tr. at 566). He said Nieman could lift and carry ten pounds frequently and walk/stand two hours in an eight-hour workday, and sit up to two hours in an eight-hour workday. *Id.* He concluded that Nieman would need to elevate his feet, change positions frequently, and frequently rest. *Id*. Dr. Troxel said Nieman would miss more than three days per month of work. *Id*. Dr. Troxel attested that his opinion was based on clinical observations, tests and procedures. *Id*. The ALJ gave less weight to Dr. Troxel because his report did not contain a concurrent physical examination.

Nieman argues he met Listing 1.04 for Disorders of the Spine. The Listings

5

define "impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity . . . that is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A claimant has the burden of proving that an impairment (or combination of impairments) meets or equals a Listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). To meet a Listing, an impairment must meet all of the Listing's specified criteria. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

Listing 1.04 requires:

> A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> OR
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful

dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
OR
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404 Subpart P., Appx. 1, 1.04.

The ALJ did not discuss Listing 1.04 anywhere in his opinion. The Eighth Circuit has held that this omission may constitute reversible error. In *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005), the ALJ also failed to discuss the relevant listing. In that case:

> The applicant claimed that she was disabled due to mental retardation. In finding that the applicant's impairment did not meet the listing for mental retardation, the ALJ failed to address the only evidence in the record evaluating the claimant's IQ -- evidence which indicated that the claimant met the listing for mental retardation. In addition, the ALJ failed to reference the listing for mental retardation or otherwise indicate that he considered the listing relevant to the disability. In light of the ALJ's failure to adequately support his findings at step three, we could not determine whether substantial evidence supported the finding that the claimant did not meet or medically equal the listing. Therefore, we remanded the [*Chunn*] case for further proceedings.

*Scott v. Astrue*, 529 F.3d 818, 822 (8th 2008).

In this case, MRIs and clinical examinations from multiple doctors indicated serious impairment in Nieman's back and legs. Dr. Troxel assigned functional

limitations that reflected Nieman's condition, and arguably those limitations could have precluded any work, although the Court is not required to make that determination.

Where an ALJ fails to discuss a relevant listing, that error may be harmless if the record as a whole supports his overall conclusion. *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). The medical evidence in this case offers support for Nieman's claim of disability, but the Court simply cannot determine if substantial evidence supports the ALJ's Listing decision since he failed to even mention Listing 1.04. *Scott*, 529 F.3d at 822-33 (when an ALJ fails to support a finding that the claimant did not meet or equal a listing, and when the record contains inconsistencies on the issue, "we are unable to determine whether substantial evidence supports the ALJ's finding that [the claimant's] impairments did not meet or medically equal [the] listing"). The ALJ erred in failing to discuss Listing 1.04 in this case.

### IV.  **Conclusion:**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred by not discussing Listing 1.04, which was a relevant Listing based on the medical evidence.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 16th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE